Alexander G. Calfo (SBN 152891)
  *acalfo@kslaw.com*
**KING & SPALDING LLP**
633 West 5th Street, Suite 1600
Los Angeles, CA 90071
Tel: (213) 443-4355
Facsimile: (213) 443-4310

John P. Hooper (*pro hac vice pending*)
  *jhooper@kslaw.com*
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Facsimile: (212) 556-2222

Jessica K. Shook (pro hac vice pending)
  *jshook@kslaw.com*
**KING & SPALDING LLP**
110 N Wacker Drive
Suite 3800
Chicago, IL 60606
Tel: (312) 764-6943
Facsimile: (312) 995-6330

Attorneys for Defendant
TOYOTA MOTOR SALES, U.S.A., INC.

Mark D. Campbell(SBN 180528)
  *mcampbell@shb.com*
Michael L. Mallow (SBN 188745)
  *mmallow@shb.com*
Rachel A. Straus (SBN 268836)
  *rstraus@shb.com*
**SHOOK, HARDY & BACON L.L.P.**
2121 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel: (424) 285-8330
Facsimile: (424) 204-9093

Kevin J. Minnick (SBN 269620)
  *kminnick@spertuslaw.com*
**SPERTUS LANDES & JOSEPHS LLP**
617 West 7th Street, Suite 200
Los Angeles, CA 90017
Tel: (213) 205-6520
Facsimile: (213) 205-6521

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

GLENN KESSELMAN, an individual, on behalf of himself and all others similarly situated, et al.

Plaintiffs,

v.

TOYOTA MOTOR SALES, U.S.A., INC., a California corporation,

Case No: 2:21-cv-06010-TJH-JC

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL**

# **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................1

II.    BACKGROUND ............................................................................1

        1     Plaintiffs' Allegations and the Parties' Motion Practice ............2

        2     Settlement Negotiations ...............................................4

        3     Settlement Terms ........................................................5

III.   FAIRNESS, REASONABLENESS, AND ADEQUACY OF
       PROPOSED SETTLEMENT ........................................................7

IV.    THE SETTLEMENT IS A FAIR, REASONABLE, AND ADEQUATE
       OUTCOME FOR CLASS MEMBERS ........................................10

        1     Recovery for Class Members ...................................10

        2     The Weaknesses of Plaintiffs' Case; Case's Risk, Expense,
       and Complexity; Extent of Discovery Completed; and
       Duration of Further Litigation ..................................10

        3     Equitable Method of Allocating Relief to Class Members
       and Effectiveness of Distributing Relief ...................13

        4     Release of Claims ....................................................14

V.     NOTICE PROGRAM AND NOTIFICATION PROCEDURES .................15

VI.    THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION
       PENDING FINAL APPROVAL OF THE PROPOSED SETTLEMENT....18

VII.   CONCLUSION ........................................................21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adoma v. Univ. of Phx., Inc.*,
  913 F. Supp. 2d 964 (E.D. Cal. 2012) ...........................................................11, 12

*Ashok Babu v. Wilkins*,
  No. 22-15275, 2023 WL 6532647 (9th Cir. Oct. 6, 2023)................................15

*Briseño v. Henderson*,
  998 F.3d 1014 (9th Cir. 2021) (applying 2018 version of Rule
  23(e)(2))..............................................................................................................8

*Calhoun v. Invention Submission Corp.*,
  No. 2:18-cv-01022, 2022 WL 20561728 (W.D. Pa. Aug. 24, 2022).................20

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) ..........................................................................10

*Chan v. Sutter Health Sacramento Sierra Region*,
  No. LA CV15-02004 ....................................................................................5, 16

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) .............................................................................7

*Dack v. Volkswagen Grp. of Am., Inc.*,
  No. 4:20-CV-00615-RK, 2024 WL 698797 (W.D. Mo. Jan. 18, 2024) ...........20

*In re Diet Drugs*,
  282 F.3d 220 (3d Cir. 2002) ..................................................................18, 19, 20

*Frank v. United Airlines, Inc.*,
  216 F.3d 845 (9th Cir. 2000) .............................................................................15

*Hart v. Colvin*,
  No. 15-cv-00623-JST, 2016 WL 6611002 (N.D. Cal. Nov. 9, 2016)...............13

*Hartranft v. TVI, Inc.*,
  No. SACV 15-01081-CJC-DFM, 2019 WL 1746137 (C.D. Cal. Apr.
  18, 2019) ...........................................................................................................18

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ............................................................ 14

*Jacobs v. CSAA Inter-Ins.*,
  No. C 07-00362 MHP, 2009 WL 1201996 (N.D. Cal. May 1, 2009)....18, 19, 20

*Kim v. Sheraton Operating Corp.*,
  No. CV 17-9247 FMO, 2021 WL 3598578 (C.D. Cal. June 23, 2021) ............... 7

*Klein v. O'Neal, Inc.*,
  705 F. Supp. 2d 632 (N.D. Tex. 2010) ............................................... 18

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ............................................................ 11

*Liles v. Del Campo*,
  350 F.3d 742 (8th Cir. 2003) ............................................................ 19

*In re Linerboard Antitrust Litig.*,
  361 F. App'x 392 (3d Cir. 2010) ....................................................... 20

*Lucas v. Kmart Corp.*,
  234 F.R.D. 688 (D. Colo. 2006) ........................................................ 19

*Marshall v. Northrop Grumman Corp.*,
  469 F. Supp. 3d 942 (C.D. Cal. 2020) ................................................. 9

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000) .................... 9, 12

*In re Mex. Money Transfer Litig.*,
  No. 98-C-2407, 1999 WL 1011788 (N.D. Ill. Oct. 19, 1999) ..................... 20

*Moreno v. JCT Logistics, Inc.*,
  No. EDVC 17-2489 ........................................................................ 13

*Morris v. PHH Mortg. Corp.*,
  No. 20-60633-CIV-SMITH, 2022 WL 18859412 (S.D. Fla. Dec. 22,
  2022) ....................................................................................... 20

*Ms. L. v. U.S. Immigr. & Customs Enf't*,
  330 F.R.D. 284 (S.D. Cal. 2019) ....................................................... 11

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL

*Padilla v. Whitewave Foods Co.*,
 No. 2:18-cv-09327-SB-JC, 2021 WL 4902398 (C.D. Cal. May 10,
 2021) ............................................................................................... 5, 16

*In re Portal Software, Inc. Sec. Litig.*,
 No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............. 11

*In re Ring LLC*,
 No. CV 19-10899-MWF, 2023 WL 9687346 (C.D. Cal. Dec. 20,
 2023) ..................................................................................................... 9

*Rodriguez v. W. Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) .................................................... 7, 10, 12

*Simerlein v. Toyota Motor Corp.*,
 No. 3:17-cv-1091 (VAB), 2019 WL 1435055 (D. Conn. Jan. 14,
 2019) ................................................................................................... 19

*Smith v. Ford Motor Co.*,
 749 F. Supp. 2d 980 (N.D. Cal. 2010), *aff'd*, 462 F. App'x 660 (9th
 Cir. 2011) ............................................................................................. 11

*Spann v. J.C. Penney Corp.*,
 314 F.R.D. 312 (C.D. Cal. 2016) ...........................................*passim*

*Standard Microsys. Corp. v. Tex. Instruments Inc.*,
 916 F.2d 58 (2d Cir. 1990) ................................................................... 19

*Stratton v. Glacier Ins. Adm'rs, Inc.*,
 No. 1:02-CV-06213 OWW DLB, 2007 WL 274423 (E.D. Cal. Jan.
 29, 2007) ............................................................................................. 19

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,
 & Prods. Liab. Litig.*,
 No. 8:10ML 02151 JVS, 2013 WL 12327929 (C.D. Cal. July 24,
 2013) ................................................................................................... 12

*Uschold v. NSMG Shared Servs., LLC*,
 333 F.R.D. 157 (N.D. Cal. 2019) ............................................................ 7

*Victorino v. FCA US LLC*,
 No. 16cv1617-GPC(JLB), 2023 WL 3296155 (S.D. Cal. May 5, 2023)...........20

*In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*,
    No. LA ML19-02905 ........................................................................ 20

**Statutes**

28 U.S.C. § 1715 ................................................................................. 17

All Writs Act, 28 U.S.C. § 1651 ......................................................... 19, 20

Anti-Injunction Act, 28 U.S.C. § 2283 ............................................... 18, 19

**Other Authorities**

Fed. R. Civ. P. 23 .......................................................................... *passim*

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY APPROVAL

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Toyota Motor Sales, U.S.A., Inc. ("Toyota," "TMS," and/or "Defendant") supports Plaintiffs' request that this Court grant preliminary approval of this Rule 23(b)(2) injunctive-only class action Settlement and issue related relief.  For the reasons stated in Plaintiffs' Motion for Preliminary Approval of the Class Action Settlement and those discussed below, such relief is appropriate because the proposed Settlement satisfies Rule 23(e); is the product of serious, informed, non-collusive negotiations; has no obvious deficiencies; does not improperly grant preferential treatment to Plaintiffs or segments of the Class; and falls within the reasonable range of approval.[1]

## II.    BACKGROUND

As a result of extensive arm's length negotiations and meaningful discovery, Toyota, Class Counsel, and Plaintiffs, acting on behalf of the Class Members, have executed a Settlement Agreement to resolve this case (the "Action") and claims arising out of the allegedly defective hands-free phone system in the Subject Vehicles, in which Plaintiffs assert that when the driver of the Toyota vehicle uses the hands-free phone system to make or receive a call, the person on the other end of the call purportedly hears an echo of his or her own words (the "Echo Issue").

Under the proposed Settlement, Toyota has agreed to provide injunctive relief in the form of an Outreach Program, the goal of which is to educate Class Members about the existence of the Echo Issue and how to adjust the volume settings on their cell phones and in their Subject Vehicles in order to address the alleged Echo Issue. *See* Settlement Agreement, Section III.A.

To avoid the burden, expense, risk, and uncertainty of continuing to litigate the

---

[1] Unless otherwise specified, capitalized terms in this brief have the meanings assigned to them in the Settlement Agreement.

claims and to put to rest the claims alleged by the proposed Settlement Class, Toyota, without any admission of liability or wrongdoing, supports Plaintiffs' Motion for Preliminary Court Approval of the Proposed Settlement.

### 1    Plaintiffs' Allegations and the Parties' Motion Practice

The Parties have engaged in active litigation for nearly six years. On July 24, 2019, Plaintiffs Terry Freeman and Andrew Trout, individually and on behalf of a putative class, filed a Class Action Petition in the Circuit Court of St. Louis County, Missouri at Clayton (the "*Freeman* Action") against TMS, Toyota Motor North America, Inc. ("TMNA"), and Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") (collectively, "*Freeman* Toyota Defendants"), alleging that certain Toyota vehicles were defective and contained an Echo Issue. On September 12, 2019, TMS, TMNA, and TEMA removed the *Freeman* Action to the United States District Court for the Eastern District of Missouri, and the plaintiffs later filed a first amended class action complaint ("*Freeman* FAC").

The *Freeman* Toyota Defendants filed a motion to dismiss the *Freeman* FAC, and on November 30, 2020, the court issued its memorandum and order granting in part and denying in part their motion to dismiss.[2]

On June 16, 2021, plaintiff Glenn Kesselman, a resident of California, individually and on behalf of an "unknown" number of plaintiffs, filed a class action complaint in the Superior Court of the State of California, County of Los Angeles, Case No. 21STCV22797, against TMS and TMNA. The complaint raised similar allegations of an Echo Issue. TMS, TMNA, and TEMA ("Original *Kesselman* Defendants") removed the Action to the United States District Court for the Central District of California, ECF No. 1, and filed a motion to dismiss the *Kesselman* class action complaint. ECF No. 14.

---

[2] On June 1, 2021, the parties stipulated to the filing of a second amended complaint in the *Freeman* Action, which replaced plaintiffs Terry Freeman and Andrew Trout with plaintiff Jamie Brown.

On August 12, 2021, Plaintiff Kirk Coviello, individually and on behalf of a putative class, filed a class action petition against TMS and TMNA in the Superior Court of California, County of Los Angeles, Case No. 21STCV30101, also alleging certain Toyota vehicles contained an Echo Issue ("*Coviello* Action").

On December 2, 2021, the Court denied the Original *Kesselman* Defendants' motion to dismiss the Action. ECF No. 32.

On December 29, 2021, Plaintiffs filed their first amended class action complaint ("FAC") in the Action, which (i) added fourteen named plaintiffs; (ii) defined fifteen state classes; and (iii) added twenty causes of action, including violations of the various Class State's consumer protection statutes. ECF Nos. 39 ¶¶ 7–39, 351–700.

On January 28, 2022, the Original *Kesselman* Defendants filed their motion to dismiss the FAC. ECF Nos. 59–60.

On February 22, 2022, the *Coviello* court stayed the *Coviello* Action pending the outcome of the Action and the *Freeman* Action.

On March 8, 2022, TMS, TMNA, and TEMA filed a Stipulation to Consolidate Actions to consolidate the Action and *Freeman* Action, ECF No. 65, which the Court approved. The Court ordered Plaintiffs to file a second amended complaint ("SAC") and a single motion for class certification in the consolidated action. ECF No. 67.

On March 25, 2022, the Court ordered that the SAC not name TMNA or TEMA, as they were dismissed from the Action. ECF No. 79. On September 19, 2022, the Court granted in part and denied in part TMS' motion to dismiss the FAC, dismissing without prejudice the plaintiffs' equitable claims based on failure to allege that legal remedies were inadequate and denying the motion to dismiss on all other grounds. ECF No. 97.

On October 5, 2022, plaintiffs filed the SAC, which contained new allegations as to the newly consolidated case of *Freeman et al. v. Toyota Motor Sales, U.S.A. Inc.* ECF No. 98. The SAC removed Sharon Menzel (Florida) and Joao Sousa (New

Jersey) as plaintiffs and added plaintiff Jamie Brown (Missouri). *Id.* ¶¶ 7–37. The SAC also did not name TMNA or TEMA as defendants. *Id.* ¶¶ 38–42. On October 19, 2022, TMS filed its answer to the SAC. ECF No. 100.

On March 13, 2023, and March 5, 2024, plaintiffs filed a third amended consolidated class action complaint and fourth amended consolidated class action complaint, respectively, dropping and adding additional plaintiffs to this Action. ECF Nos. 108, 127.

On January 6, 2025, plaintiffs filed their fifth amended complaint (the "Operative Complaint"), which limited the relief sought to injunctive relief, defined eleven state classes—including California, Arizona, Colorado, Missouri, Washington, Illinois, Georgia, New York, Ohio, Oregon, and Minnesota, and alleged thirteen causes of action, including violations of various consumer protection statutes of the Class States. ECF No. 139 ¶¶ 16–40, 319–544.

During the litigation, in addition to the Parties exchanging interrogatories and responses thereto, Toyota produced and Plaintiffs analyzed over 8,000 documents totaling over 90,000 pages. Toyota also conducted the deposition of 11 plaintiffs, including plaintiffs from the *Freeman* Action.

## 2    Settlement Negotiations

In January 2021, the Parties engaged in a Court-ordered mediation in the *Freeman* Action, but they did not reach a resolution. The Parties resumed litigation. In February 2023, the Parties re-engaged to seek potential resolution of the case; however, these efforts were also unsuccessful. In December 2023, the Parties again reopened negotiations for settlement. In early 2024, after further negotiations were unsuccessful, the Parties again returned to litigation.

In May 2024, the Parties discussed a Rule 23(b)(2) injunctive-only class action settlement. Over the next several months, the Parties negotiated the terms of the Settlement, ultimately agreeing on the principal terms as of October 18, 2024. Only after agreeing on these terms did Class Counsel and Toyota's Counsel negotiate the

terms of Attorneys' Fees, Costs, and Expenses and Class Representative service awards.  The Parties reached agreement in principle on these terms on December 2, 2024.

### 3    Settlement Terms

The Settlement Agreement covers all individuals or legal entities who, at any time as of the occurrence of the Initial Notice Date, own(ed), purchase(d), or lease(d) Subject Vehicles in the States of Arizona, California, Colorado, Georgia, Illinois, Minnesota, Missouri, New York, Ohio, Oregon, and Washington (the "Class"). Subject Vehicles include certain 2014–2019 4Runner, 2015–2018 Avalon, 2015–2018 Avalon HV, 2014–2019 Highlander, 2014–2019 Highlander HV, 2016–2018 Mirai, 2016–2019 Prius, 2017–2019 Prius Prime, 2015–2019 Prius V, 2014–2019 Sequoia, 2015–2017 Sienna, 2014–2019 Tacoma, 2014–2019 Tundra, 2015 Venza, and 2018–2019 Yaris vehicles.

As the proposed Settlement is a mandatory Rule 23(b)(2) settlement, Class Members will not be given an opportunity to exclude themselves from the Class. *Padilla v. Whitewave Foods Co.*, No. 2:18-cv-09327-SB-JC, 2021 WL 4902398, at *4 (C.D. Cal. May 10, 2021) ("The Court therefore exercises its discretion and does not direct notice because the settlement does not alter the unnamed class members' legal rights." (quotation omitted)); *Chan v. Sutter Health Sacramento Sierra Region*, No. LA CV15-02004 JAK (AGRx), 2016 WL 7638111, at *14 (C.D. Cal. June 9, 2016) ("Because notice is optional for a Rule 23(b)(2) class . . . and the Class Members' rights will not be prejudiced by the Settlement Agreement, notice is not required for purposes of the proposed Settlement Agreement.").

As discussed in more detail below, the proposed injunctive-only Settlement provides a valuable Outreach Program to Class Members.

### a    Outreach Program

As per the Settlement Agreement, Toyota agrees to provide an Outreach Program, which is designed to educate Class Members about the existence of the Echo

Issue and how to adjust the volume settings on their cell phones and in their Subject Vehicles to address the alleged Echo Issue. *See* Settlement Agreement Section III.A.1, Dkt. No. 145-3. The Outreach Program is designed to significantly increase understanding of the Volume Adjustment Protocol via outreach efforts beyond those currently used by Toyota. *Id.* The multifaceted Outreach Program will include the following items:

    a.  A Volume Adjustment Protocol Website, which shall contain (i) detailed customer instructions related to the Volume Adjustment Protocol, the language of which has been negotiated and agreed upon by the Parties, (ii) an enhanced video instructing Class Members of the Volume Adjustment Protocol, the script for which has been negotiated and agreed upon by the Parties, and (iii) a link to the Settlement website, *see id.* Section III.A.1.a;

    b.  Direct contact to current owners and lessees of Subject Vehicles in Class States via U.S. Mail, or, where available, by email, which includes (i) information about the Echo Issue, (ii) enhanced instructions for the Volume Adjustment Protocol, the language of which has been negotiated and agreed upon by the Parties, (iii) a QR code that shall be designed to take Class Members to the Volume Adjustment Protocol Website, and (iv) a QR code that will refer Class Members to the Settlement website, *see id.* Section III.A.1.b;

    c.  A social media program, which will include social media advertisements that target Class Members and provides settlement-related information to Class Members, including directing the Class Members to the Volume Adjustment Protocol Website, *see id.* Section III.A.1.c; and

    d.  A renewed Tech Tip, which will be available to Dealers and will include the enhanced instructions and a link to the Volume Adjustment Protocol Website and enhanced video, *see id.* Section III.A.1.d.

The Outreach Program, including access to the Volume Adjustment Protocol

1  Settlement Website, shall begin on the Initial Notice Date and shall terminate three (3)

2  years after the Initial Notice Date.  *See id.* Section III.A.2.

3  **III.    FAIRNESS, REASONABLENESS, AND ADEQUACY OF**

4  **PROPOSED SETTLEMENT**

5  The Ninth Circuit has long recognized a strong judicial policy favoring

6  settlement, particularly of complex class actions, and has "long deferred to the private

7  consensual decision of the parties." *See Spann v. J.C. Penney Corp.*, 314 F.R.D. 312,

8  323–24 (C.D. Cal. 2016) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965

9  (9th Cir. 2009)); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir.

10  1992).  The Ninth Circuit has emphasized that:

11  [T]he court's intrusion upon what is otherwise a private consensual agreement

12  negotiated between the parties to a lawsuit must be limited to the extent necessary to

13  reach a reasoned judgment that the agreement is not the product of fraud or

14  overreaching by, or collusion between, the negotiating parties, and that the settlement,

15  taken as a whole, is fair, reasonable and adequate to all concerned.

16  *Rodriguez*, 563 F.3d at 968.  "Preliminary approval is thus appropriate if 'the

17  proposed settlement appears to be the product of serious, informed, noncollusive

18  negotiations, has no obvious deficiencies, does not improperly grant preferential

19  treatment to class representatives or segments of the class, and falls within the range

20  of possible approval.'" *Uschold v. NSMG Shared Servs., LLC*, 333 F.R.D. 157, 169

21  (N.D. Cal. 2019) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

22  1079 (N.D. Cal. 2007)).  "At the preliminary approval stage, 'the settlement need only

23  be potentially fair.'"  *Id.* (quoting *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386

24  (C.D. Cal. 2007)).  "[C]loser scrutiny is reserved for the final approval hearing[.]"

25  *Kim v. Sheraton Operating Corp.*, No. CV 17-9247 FMO (ASx), 2021 WL 3598578,

26  at *4 (C.D. Cal. June 23, 2021) (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198

27  EMC, 2011 WL 1627973, at *7 (N.D. Cal. Apr. 29, 2011)).

28  "The Ninth Circuit does not follow the approach of other circuits that requires

district courts to 'specifically weigh[] the merits of the class's case against the
settlement amount and quantif[y] the expected value of fully litigating the matter."
*Spann*, 314 F.R.D. at 323–24 (citing *Rodriguez*, 563 F.3d at 965).  Instead, courts in
the Ninth Circuit "examine[] whether the settlement is 'the product of an arms-length,
non-collusive, negotiated resolution.'"  *Id.* at 324 (quotation omitted).  "When it is,
courts afford the parties the presumption that the settlement is fair and reasonable."
*Id.* (citing *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *9
(C.D. Cal. June 10, 2005).

  "The central concern in reviewing a proposed class-action settlement is that it
be fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2) advisory committee's
notes to 2018 amendment.  In December 2018, Congress and the Supreme Court
amended Rule 23(e) to set forth specific factors a court should consider when
determining whether a settlement is "fair, reasonable, and adequate," including
whether:

  A. the class representatives and class counsel have adequately represented
    the class;

  B. the proposal was negotiated at arm's length;

  C. the relief provided for the class is adequate, taking into account: (i) the
    costs, risks, and delay of trial and appeal; (ii) the effectiveness of any
    proposed method of distributing relief to the class, including the method
    of processing class-member claims; (iii) the terms of any proposed award
    of attorney's fees, including timing of payment; and (iv) any agreement
    required to be identified under Rule 23(e)(3); and

  D. the proposal treats class members equitably relative to each other.

  Fed. R. Civ. P. 23(e)(2); *see also Briseño v. Henderson*, 998 F.3d 1014, 1023
(9th Cir. 2021) (applying 2018 version of Rule 23(e)(2)).  "In evaluating the fairness
of a proposed class action settlement, the Court may consider some or all of the
following factors: (1) the strength of the plaintiffs' case, (2) the risk, expense,

complexity, and likely duration of further litigation, (3) the risk of maintaining class action status throughout the trial, (4) the amount offered in settlement, (5) the extent of discovery completed and the stage of the proceedings, (6) the experience and views of counsel, (7) the presence of a governmental participant, and (8) the reaction of the class members to the proposed settlement."[3] *Marshall v. Northrop Grumman Corp.*, 469 F. Supp. 3d 942, 948 (C.D. Cal. 2020) (citing *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020)).

The Settlement Agreement "does not disclose grounds to doubt its fairness[,] . . . such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval[.]." *Spann*, 314 F.R.D. at 323 (quoting *In re Vitamins Antitrust Litig.*, MDL 1285, 2001 WL 856292, at *4 (D.D.C. July 25, 2001)); *see also, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458–59 (9th Cir. 2000), *as amended* (June 19, 2000).

Here, there has been no collusion or fraud leading to, or taking part in, the settlement negotiations between the Parties.[4]  To the contrary, as laid out above, the Parties have been engaged in substantial and periodic arm's length negotiations since early 2021, which have included numerous video conference meetings, e-mails, and telephone conferences.

Additionally, Attorneys' Fees, Costs, and Expenses and service awards for the Class Representatives were not discussed or negotiated until all other material settlement terms had been agreed upon, *see* Settlement Agreement Section VII.A,

---

[3] Factors 7 and 8 will be addressed in the Motion for Final Approval after notice has been issued.

[4] "[A] collusion analysis is generally not applicable 'where, as here, the settlement is for injunctive relief purposes only and class members do not release any monetary claims.'" *In re Ring LLC*, No. CV 19-10899-MWF (RAOx), 2023 WL 9687346, at *5 (C.D. Cal. Dec. 20, 2023) (quoting *Moreno v. S.F. Bay Area Rapid Transit Dist.*, No. 17-cv-02911-JSC, 2019 WL 343472, at *3 n.2 (N.D. Cal. Jan. 28, 2019)).

1  eliminating the possibility of a trade-off between compensation for the Settlement
2  Class and compensation for Class Counsel or Class Representatives.

3         Finally, the Parties are represented by highly experienced counsel who
4  investigated and considered their own and the opposing party's positions and who
5  measured the terms of the Settlement against the risks of continued litigation.  Thus,
6  the negotiations were not "the product of fraud or overreaching by, or collusion
7  between, the negotiating parties."  *See Spann*, 314 F.R.D. at 323.

8    IV.    **THE SETTLEMENT IS A FAIR, REASONABLE, ANDADEQUATE**
9                      **OUTCOME FOR CLASS MEMBERS**

10           **1       Recovery for Class Members**

11         Consistent with Rule 23(e), the proposed Settlement is fair, reasonable, and
12  adequate, particularly when measured against the allegations in this case.  Plaintiffs
13  have alleged that the hands-free phone system in the Subject Vehicles is defective,
14  such that when the driver of the Toyota vehicle uses the hands-free phone system to
15  make or receive a call, the person on the other end of the call hears an echo of his or
16  her own words.  While TMS denies the allegations, Toyota has agreed to provide an
17  Outreach Program, which educates Class Members about the existence of the Echo
18  Issue and how to adjust the volume settings on their cell phones and in their Subject
19  Vehicles to address the purported issue.  The proposed Settlement thus provides the
20  injunctive relief necessary to address the allegations of the Operative Complaint.
21  *Campbell*, 951 F.3d at 1123 (affirming the district court's conclusion that a settlement
22  providing only injunctive relief was fair and reasonable because "it provide[d]
23  information to users about Facebook's message monitoring practices" in return for a
24  release of nonmonetary claims).

25           **2       The Weaknesses of Plaintiffs' Case; Case's Risk, Expense, and**
26                      **Complexity; Extent of Discovery Completed; and Duration of**
27                      **Further Litigation**

28         The unpredictability of trials generally weighs in favor of a finding that a

settlement is fair, adequate, and reasonable. *See Rodriguez*, 563 F.3d at 964 ("[T]he very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation . . . induce[s] consensual settlements." (quoting *Officers for Just. v. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982)).  Based on the procedural history to date and what is expected to occur in the future, Toyota posits that the weaknesses of Plaintiffs' case and the enormous complexity, expense, and likely duration of this litigation overwhelmingly weigh in favor of a finding that the Settlement is fair, reasonable, and adequate. *See Lane v. Facebook, Inc.*, 696 F.3d 811, 820, 825 (9th Cir. 2012) (upholding settlement approval in which "unclear factual issues undermined the strength of the plaintiffs' case," "the complex nature of the plaintiffs' claims increased the risk and expense of further litigation," and counsel "reasonably concluded that the immediate benefits represented by the Settlement outweighed the possibility—perhaps remote—of obtaining a better result at trial" (quotations omitted)); *Adoma v. Univ. of Phx., Inc.*, 913 F. Supp. 2d 964, 975 (E.D. Cal. 2012) (In evaluating the strength of a case, a court assesses "objectively the strengths and weaknesses inherent in the litigation and the impact of those considerations on the parties' decisions to reach" a settlement agreement. (quotation omitted)).

If this class action were to proceed, the Parties would engage in substantial motion practice for class certification and summary judgment.  In fact, even if a defect were to be shown by Plaintiffs, Toyota would still have significant arguments for summary judgment and class certification. *See, e.g.*, *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 991–92 (N.D. Cal. 2010) (granting defendant's motion for summary judgment and finding alleged ignition-lock defect not a safety risk), *aff'd*, 462 F. App'x 660 (9th Cir. 2011).  Even if Plaintiffs were to win class certification, they would risk decertification, which can occur at any time. *See Ms. L. v. U.S. Immigr. & Customs Enf't*, 330 F.R.D. 284, 287 (S.D. Cal. 2019) ( "[C]ourts retain discretion to revisit class certification throughout the legal proceedings.").

If Plaintiffs were to survive class certification and summary judgment, there is

still no guarantee that they would recover anything at trial.  *See In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (recognizing that "inherent risks of proceeding to . . . trial and appeal also support the settlement").  In light of the substantial risks of continued litigation, including the risk of maintaining class certification, the significant relief secured for the Class by the proposed Settlement should be viewed as a fair, reasonable, and adequate compromise of the issues in dispute.  *See Rodriguez*, 563 F.3d at 966 (holding that the case being "complex" and likely "expensive and lengthy to try," the remaining "number of serious hurdles," and the "[i]nevitable appeals" that "would likely prolong the litigation, and any recovery by class members, for years" appropriately supported the district court's approval of the settlement); *Adoma*, 913 F. Supp. 2d at 976 ("In assessing the risk, expense, complexity, and likely duration of further litigation, the court evaluates the time and cost required.").

In addition to significant motion practice, the Parties have conducted extensive discovery, including exchanging interrogatories and responses thereto and the production and review of 90,000 pages of documents from Toyota alone.  Toyota also conducted the deposition of 11 plaintiffs, including plaintiffs from the *Freeman* Action.  Through these efforts, the Parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case, which weighs in favor of preliminary approval.  This support is particularly compelling given that the Ninth Circuit has affirmed settlement approvals even in the absence of formal discovery.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (noting that "[i]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement" (quotation omitted)).

The proposed Settlement, which guarantees Class Members considerable relief, provides significant advantages over "rolling the dice" and proceeding to trial with an unknown outcome.  *See, e.g., In re Toyota Motor Corp. Unintended Acceleration*

*Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 8:10ML 02151 JVS (FMOx), 2013 WL 12327929, at *20 (C.D. Cal. July 24, 2013) (approving class settlement and noting, "[s]imply put, Plaintiffs might eventually recover more with continued litigation, but they also might recover nothing"). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Moreno v. JCT Logistics, Inc.*, No. EDVC 17-2489 JGB (KKx), 2023 WL 9319048, at *5 (C.D. Cal. Apr. 28, 2023) (noting the "long, complex, and expensive process" to litigate the case's merits, including the possibility of class decertification (quotation omitted)).

### 3    Equitable Method of Allocating Relief to Class Members and Effectiveness of Distributing Relief

The Outreach Program, as injunctive relief, "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern [for this factor] could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.*, advisory committee's notes. Here, the Settlement treats all Class Members the same. The Outreach Program's goal is to educate owners and lessees of the Subject Vehicles about the existence of the Echo Issue and how to adjust the volume settings on their cell phones and in their Subject Vehicles in order to address the alleged Echo Issue. This goal will be achieved through the multi-faceted Outreach Program, which includes (i) a Volume Adjustment Protocol Website, (ii) direct contact via mail or e-mail to Direct Mail Recipients, (iii) a social media program, and (iv) a renewed Tech Tip. These extensive and diverse methods to distribute the relief are designed to maximize receipt by all Class Members.

Moreover, as all Class Members will have access to the Outreach Program and as there is no monetary component to this Settlement, there is no risk that certain Class Members will recover disproportionately relative to another. *See Hart v.*

*Colvin*, No. 15-cv-00623-JST, 2016 WL 6611002, at \*9 (N.D. Cal. Nov. 9, 2016) ("When . . . the settlement provides for only injunctive relief . . . there is no potential for the named plaintiffs to benefit at the expense of the rest of the class." (quotation omitted)).  As a result, the Settlement treats all Class Members equitably, further supporting preliminary approval of the Settlement.

### 4    Release of Claims

Courts also consider whether a class action settlement contains an overly broad release of liability.  *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action." (quotation omitted)).  Here, the release agreed to by the Class is precisely tailored to address the allegations in the Operative Complaint.  Specifically, Class Members are only releasing Toyota from:

[A]ny and all any and all injunctive relief, including claims, demands, suits, petitions, liabilities, causes of action, rights, losses, and relief of any kind and/or type for injunctive relief regarding the subject matter of the Action or the Related Action, including, whether past, present, or future, mature, or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, derivative, vicarious or direct, asserted or un-asserted, including, but not limited to, alleged defects in the use, programming, and/or implementation of the hands-free phone system in the Subject Vehicles[.]

Settlement Agreement Section VII.B.

Additionally, Plaintiffs—and *only* Plaintiffs (*i.e.*, not absent Class Members)— additionally release Toyota from compensatory, exemplary, statutory, punitive, and restitutionary damages, as well as civil penalties and expert or attorneys' fees and costs. *Id.* Section VII.C.1. Importantly, the release carves out certain claims: "Class

1    Representatives and the other Class Members are not releasing claims for personal

2    injury or wrongful death." *Id.* Section VII.E.

3        The release is properly targeted to the subject matter of the Action and

4    explicitly carves out claims of a distinctly different type from the claims asserted in

5    the Action.  For these reasons, the release adequately balances fairness to absent Class

6    Members and recovery for Plaintiffs.  *See, e.g.*, *Spann*, 314 F.R.D. at 327–28 (quoting

7    *Fraser v. Asus Comput. Int'l*, No. C12-00652 WHA, 2012 WL 6680142, at *4 (N.D.

8    Cal. Dec. 21, 2012) (recognizing defendant's "legitimate business interest in 'buying

9    peace' and moving on to its next challenge" as well as the need to prioritize

10   "[f]airness to absent class member[s]")).

11       ## V.    NOTICE PROGRAM AND NOTIFICATION PROCEDURES

12       In a Rule 23(b)(2) action for injunctive relief, "there is **no requirement for**

13   **individualized notice** beyond that required by due process."  *Frank v. United*

14   *Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (emphasis added).  "Due process

15   requires notice 'reasonably calculated, under all of the circumstances, to apprise

16   interested parties of the pendency of the action and afford them an opportunity to

17   present their objections.'"  *Ashok Babu v. Wilkins*, No. 22-15275, 2023 WL 6532647,

18   at *1 (9th Cir. Oct. 6, 2023) (quoting *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d

19   1338, 1351 (9th Cir. 1980)).

20       To effectuate the goal of the Outreach Program, the proposed Settlement

21   provides for a Notice Program that will be implemented through a combination of

22   direct mailed notices, social media and online display advertising in the Class States, a

23   Settlement website, a Volume Workaround Protocol Website, a press release, Long

24   Form Notice, and other applicable notice.  Settlement Agreement Section IV;

25   Settlement Agreement, Ex. 2.  The proposed Settlement Outreach Administrator, Epiq

26   Solutions, has served as an expert and has been directly responsible for the design and

27   implementation of numerous notice programs, including some of the largest and most

28   complex programs ever implemented in the United States.  *See* Decl. of Cameron R.

Azari, Esq., Settlement Agreement, Ex. 5, ECF No. 145-3, p. 117. Courts have recognized and approved numerous notice plans developed by Epiq, and those decisions have invariably withstood appellate and collateral review. *Id.* ¶ 7. Furthermore, Cameron Azari, Esq. has over 24 years of experience in the design and implementation of legal notice and claims administration programs and is a nationally recognized expert in the creation of class action notice campaigns. *See id.* ¶¶ 2, 7.

The proposed Settlement Notice Administrator estimates that the Notice Program will reach 90% of the Direct Mail Recipients over three (3) times. *See id.* ¶ 12. Thus, the Notice Program contemplated by the Settlement Agreement is amply sufficient, especially given that notice for a Rule 23(b)(2) settlement is purely discretionary. *See Padilla*, 2021 WL 4902398, at *4 (declining to direct notice where the unnamed class members' legal rights were not altered); *Chan*, 2016 WL 7638111, at *14 ("Because notice is optional for a Rule 23(b)(2) class . . . and the Class Members' rights will not be prejudiced by the Settlement Agreement, notice is not required for purposes of the proposed Settlement Agreement."). Furthermore, Toyota will pay the costs of disseminating the notice and otherwise implementing the notice as specified in Section IV of the Settlement Agreement.

The Notice Program in greater particularity includes the following:

**Direct Mailed Outreach.** The Settlement Notice Administrator will send the Direct Mailed Outreach, substantially in the form attached to the Settlement Agreement as Exhibit 4, by e-mail or by U.S. Mail, to current owners and/or lessees of the approximately 1.8 million Subject Vehicles in Class States. *Id*. Section IV.C.1. It includes information relating to the Settlement and how to obtain the Volume Adjustment Protocol instructions via the Settlement website and/or the Volume Adjustment Protocol Website. *Id.*

**Settlement Website and Volume Adjustment Protocol Website.** The Settlement Notice Administrator will establish a Settlement website that will inform Class Members of the terms of the Settlement Agreement, their rights, deadlines, and

related information. *Id.* Section IV.D.  The Settlement website will also feature a prominent link to the Volume Adjustment Protocol Website. *Id.*  The Volume Adjustment Protocol website will contain (i) detailed customer instructions related to the Volume Adjustment Protocol, (ii) an enhanced video instructing Class Members of the Volume Adjustment Protocol, and (iii) a link to the Settlement website. *Id.* Section III.A.1.a.

**Long Form Notice.**  The Long Form Notice will be available on the Settlement website, will be in a form substantially similar to the document attached to the Settlement Agreement as Exhibit 3, and will: (a) contain a plain and concise description of the nature of the Action, the history of the litigation of the Action and the Related Action, the preliminary certification of the Rule 23(b)(2) Class for settlement purposes, and the material terms of the proposed Settlement Agreement; (b) inform Class Members of their right to object to the Settlement Agreement and appear at the Fairness Hearing; and (c) inform Class Members of Class Counsel's request for Attorneys' Fees and Expenses and individual awards to the Class Representatives, explaining that Toyota will pay these amounts. *Id.* Section IV.E.  The Long Form Notice will also inform Class Members of the binding effect of a class judgment on Class Members. *Id.*, Ex. 3.

**Class Action Fairness Act Notice.**  The Settlement Notice Administrator will send to each appropriate State and Federal official the materials specified in 28 U.S.C. § 1715 and will otherwise comply with its terms. *Id.* Section IV.H.  The identities of such officials and the content of the materials will be mutually agreeable to the Parties and in all respects comport with statutory obligations. *See id.*

Thus, the Notice Program provides interlocking methods that not only aim to reach certain Class Members individually and directly but also provides multiple alternative forms of notice through which Class Members may learn of the Settlement or obtain further information about their rights.  The procedure for providing notice and the content of the Notice Program constitute the best practicable notice to Class

1 Members, therefore exceeding the notice required for a Rule 23(b)(2) settlement. *See*

2 *id.* Section IV.

3 ## VI.   THE COURT SHOULD ISSUE A PRELIMINARY INJUNCTION

4 ## PENDING FINAL APPROVAL OF THE PROPOSED SETTLEMENT.

5     Pursuant to the "necessary in aid of" exception to the Anti-Injunction Act, 28

6 U.S.C. § 2283, and the All Writs Act, 28 U.S.C. § 1651(a), this Court may: (i) issue a

7 preliminary injunction and stay all other actions, pending final approval by the Court;

8 and (ii) issue a preliminary injunction enjoining potential Class Members, pending the

9 Court's determination of whether the Settlement Agreement should be given final

10 approval, from challenging in any action or proceeding any matter covered by this

11 Settlement Agreement, except for proceedings in this Court to determine whether the

12 Settlement Agreement will be given final approval. *See Hartranft v. TVI, Inc.*, No.

13 SACV 15-01081-CJC-DFM, 2019 WL 1746137, at *6 (C.D. Cal. Apr. 18, 2019)

14 (enjoining Settlement Class Members from commencing, pursuing, or maintaining

15 released claims in any court or tribunal pending final approval of the settlement);

16 *Jacobs v. CSAA Inter-Ins.*, No. C 07-00362 MHP, 2009 WL 1201996, at *2 (N.D. Cal.

17 May 1, 2009) ("A district court may enjoin state proceedings which affect the rights of

18 class members, where the court is supervising a settlement of a class action that is so

19 far advanced that it is equivalent to a res over which the court requires control and

20 where it would be intolerable to have conflicting orders from different courts.").

21     The Court may issue an injunction once the litigation reaches the settlement

22 stage in order to "effectuate the settlement." *See Hartranft*, 2019 WL 1746137, at *6.

23 Federal courts have often recognized that injunctions against filed parallel actions may

24 be particularly appropriate in the context of complex litigation, which "makes special

25 demands on the court that may justify an injunction otherwise prohibited." *See In re*

26 *Diet Drugs*, 282 F.3d 220, 235 (3d Cir. 2002) (affirming issuance of an injunction

27 after conditional certification and before the fairness hearing); *see also Klein v.*

28 *O'Neal, Inc.*, 705 F. Supp. 2d 632, 685 (N.D. Tex. 2010) ("The court holds that the

injunctive relief is consistent with the settlement agreement and necessary to protect the integrity and enforcement of this complex class settlement."); *Liles v. Del Campo*, 350 F.3d 742, 746 (8th Cir. 2003) (same); *Lucas v. Kmart Corp.*, 234 F.R.D. 688, 697 (D. Colo. 2006) (same).  Moreover, within the context of complex litigation, "[t]he threat to the federal court's jurisdiction posed by parallel state actions is particularly significant where there are conditional class certifications and impending settlements in federal actions."  *In re Diet Drugs*, 282 F.3d at 236 (citing *Carlough v. Amchem Prods., Inc.*, 10 F.3d 189, 203 (3d Cir. 1993)).

Where, as here, substantial negotiations have progressed to the point of settlement, competing actions, if they are filed and/or allowed to proceed, would jeopardize the realization of this settlement, interfere with this Court's ability to manage the settlement, and potentially confuse Class Members.  *See Jacobs*, 2009 WL 1201996, at *3.

Courts may issue an injunction pursuant to the "necessary in aid of" exception to the Anti-Injunction Act.  28 U.S.C. § 2283.  This exception allows a federal court to effectively prevent its jurisdiction over a settlement from being undermined by pending parallel litigation in state courts.  *See Stratton v. Glacier Ins. Adm'rs, Inc.*, No. 1:02-CV-06213 OWW DLB, 2007 WL 274423, at *1 (E.D. Cal. Jan. 29, 2007) (enjoining the parties from proceeding in related state court litigation after preliminary approval of a settlement and until a final judgment was entered in the federal case); *Simerlein v. Toyota Motor Corp.*, No. 3:17-cv-1091 (VAB), 2019 WL 1435055, at *17 (D. Conn. Jan. 14, 2019) ("[I]njunctions under the All Writs Act may be necessary or appropriate to 'prevent third parties from thwarting the court's ability to reach and resolve the merits of the federal suit before it' . . . [and] these injunctions may be issued after a settlement has been reached but prior to final court approval, to prevent third parties' filing (or threat of filing) parallel state court actions from jeopardizing the settlement." (quoting *In re Baldwin United Corp.*, 770 F.2d 328, 335–39 (2d Cir. 1985)); *Standard Microsys. Corp. v. Tex. Instruments Inc.*, 916 F.2d

58, 60 (2d Cir. 1990) (finding an exception to the Anti-Injunction Act exists where a federal court is on the verge of settling a complex matter and state court proceedings could undermine its ability to achieve that objective).

Federal courts have issued similar injunctions in other class action settlements. *See, e.g., In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, No. LA ML19-02905 JAK (MRWx), 2023 WL 6194109, at *26 (C.D. Cal. July 21, 2023); *Victorino v. FCA US LLC*, No. 16cv1617-GPC(JLB), 2023 WL 3296155, at *15 (S.D. Cal. May 5, 2023); *Dack v. Volkswagen Grp. of Am., Inc.*, No. 4:20-CV-00615-RK, 2024 WL 698797, at *5 (W.D. Mo. Jan. 18, 2024); *Calhoun v. Invention Submission Corp.*, No. 2:18-cv-01022, 2022 WL 20561728 at *6, (W.D. Pa. Aug. 24, 2022); *Morris v. PHH Mortg. Corp.*, No. 20-60633-CIV-SMITH, 2022 WL 18859412, at *10 (S.D. Fla. Dec. 22, 2022); *In re Diet Drugs*, 282 F.3d at 235; *In re Linerboard Antitrust Litig.*, 361 F. App'x 392, 395 (3d Cir. 2010).

This Court also has the authority to issue the requested injunction under the All Writs Act, 28 U.S.C. § 1651(a). The All Writs Act permits this Court to issue "all writs necessary or appropriate in aid of [its] jurisdiction[ ] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *see also Jacobs*, 2009 WL 1201996, at *2. The Act permits a federal district court to protect its jurisdiction by enjoining parallel actions by class members that would interfere with the court's ability to oversee a class action settlement. *See Jacobs*, 2009 WL 1201996, at *2 (invoking the "in aid of jurisdiction" exception to "enjoin named and absent members who have been given the opportunity to opt out of a class from participating in separate class actions"). The Court may issue an injunction as soon as "the litigation reaches the settlement stage" in order to "effectuate a final settlement." *In re Mex. Money Transfer Litig.*, No. 98-C-2407, 1999 WL 1011788, at *3 (N.D. Ill. Oct. 19, 1999).

The rights and interests of Class Members and the jurisdiction of the Court will be impaired if, pending final approval of the Settlement, parallel actions alleging virtually identical claims to those asserted in the instant action were allowed to be

filed and then to proceed.  To avoid confusing Class Members and prejudicing Toyota, and to protect the rights and interests of Class Members, as well as the Court's own jurisdiction, the Court should issue a preliminary injunction pending final approval of the Settlement, enjoining Class Members and their representatives from pursuing claims that are similar to those alleged in the Action.  The notice plan and notice materials will be disseminated to the Class and will discuss the terms of the proposed Settlement and their rights as Class Members.  Accordingly, this Court should issue a preliminary injunction to permit Class Members to review the notice materials and assess their options without any distractions engendered by the filing and prosecution of competing actions.

## VII.  CONCLUSION

The proposed Rule 23(b)(2) Class Settlement is in the best interests of the Class Members and represents a fair, reasonable, and adequate way to resolve the controversy, as measured by all the applicable standards.


Dated: January 31, 2025              **KING & SPALDING LLP**

By: */s/Alexander G. Calfo*
Alexander G. Calfo
John P. Hooper (*pro hac vice pending*)
Jessica K. Shook (*pro hac vice pending*)

**SHOOK, HARDY & BACON L.L.P.**
Mark D. Campbell
Michael L. Mallow
Rachel A. Straus


**SPERTUS LANDES & JOSEPHS LLP**
Kevin J. Minnick

Attorneys for Defendant
TOYOTA MOTOR SALES USA, INC.

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Toyota Motor Sales, Inc. certifies that this brief contains 6,731 words, which complies with the word limit of L.R. 11-6.1.

*/s/ Alexander G. Calfo*
Alexander G. Calfo