FILED
CLERK, U.S. DISTRICT COURT

MAR – 3 2026

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

GLENN KESSELMAN, an individual, on behalf of himself and all others similarly situated, et al., Plaintiffs,

vs.

TOYOTA MOTOR SALES, U.S.A., INC., a California Corporation, Defendant.

Case No. 2:21-cv-06010-TJH-AYPx

HON. TERRY J. HATTER JR.

OBJECTOR'S REPLY BRIEF OPPOSING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Introduction

In their respective briefs supporting the motion for final approval of this settlement, Class Counsel and Defendants responded to the objections filed in this case. I am filing this reply *pro se* to note the inadequacy of the responses to my Objection (Dkt. 176) and request this court to vindicate the interests of the unnamed class members.[1] Class Counsel brought us into this case to enlarge the potential liability and then conveniently lost sight of us in the settlement process.

Class counsel inappropriately deterred objections to the settlement agreement

Fed. R. Civ. P. 23(e)(5)(A) requires that an objector to a class action settlement be a "class member," state the scope of the objection ("whether it applies only to the objector, to a specific subset of the class, or to the entire class"), and "state with specificity the grounds for the objection." But in this case, Class Counsel with the agreement of the Defendant, added more requirements for objectors that are unrelated to the text or purposes of the Rule.

Those additional requirements are (1) the requirement that objectors list with specificity each instance of objecting in class action litigation within a five-year-period (or affirmatively state that there are none); (2) the requirement to provide copies of all rulings on such objections by trial or appellate courts, which could be voluminous and would add printing and mailing costs; and (3) the requirement to disclose personal information (including home address, mailing address, email address, phone number, vehicle identification number (VIN), and handwritten signature) on the public docket of this case (even if represented by counsel). (Dkt. 176 at Page

---

[1] I continue to object only to the proposed payments to Class Counsel and the Representative Plaintiffs (*see* Dkt. 176 at Page ID 4712). I take no position on the other portions of the settlement related to injunctive relief.

IDs 4712-14.) These requirements were added to make objecting harder, more costly, and to trick laypersons into believing that objecting is a limited or exhaustible privilege rather than a durable right. In other words, Class Counsel have improperly tried to discourage objections so that the settlement agreement is more likely to be approved.

In its brief, the Defendant claims that these additional disclosure requirements somehow "derive directly from" the Class Action Fairness Act of 2005 and Rule 23(e)(5)(A) because the Rule requires that objections clearly state their scope and explain their reasoning. (Dkt. 185 at Page ID 4859.) This tenuous argument is not "direct" at all. None of the additional disclosure requirements appear in the text of the Rule, nor the statute, and (perhaps tellingly) Defendant offers no citation to a case explaining this connection. None of the additional disclosure requirements are relevant to determining the scope of the objection or its grounds.

Defendant further claims that the additional disclosure requirements are necessary to "identify[] serial objectors who may seek to extract payments in exchange for withdrawing meritless objections." (Id. at Page ID 4860.) Puzzlingly, Defendant then offers two citations that *undercut* this claim—Rule 23(e)(5)(B), which already effectively bars objector profiteering by requiring judicial approval of any such payments, and *Retta v. Millenium Prods., Inc.*, No. CV15-1801, 2017 WL 5 5479637, at *7 (C.D. Cal. Aug. 22, 2017), in which two serial objectors were found out even though *none* of the problematic disclosure requirements from this case were required for objectors in that case. (*See*, *Retta*, 15-cv-01801, Dkt. 103-3, at Page ID 1912-13.)

Defendant's own citations show that existing law already guards against profiteering and that additional disclosure requirements are not necessary to identify serial objectors. Furthermore, the court in *Retta* still considered and analyzed the serial objectors' arguments before rejecting them as "meritless" and "incorrect," which shows that even a serial objector with a history of filing meritless papers may not be excluded solely for that reason. (*Id.* Dkt. 142, at Page ID 3091-92.)

Concerns about serial objectors do not justify the additional disclosure requirements. The proper response to a serial class action objector is to consider their arguments (which, if meritless, can be swiftly dispatched, as the court did in *Retta*, while existing authorities like sanctions powers and bond requirements can limit vexatious conduct).[2] Chilling objections from

---

[2] There is also the possibility that a serial objector, because they regularly interact with the class action process, may be more skilled than the average class member at spotting genuine problems and efficiently bringing them to the court's attention. Excluding objectors merely due to frequency is not appropriate.

the entire class merely because someone who has objected frivolously in a different case might object frivolously here is not an option supported by Rule 23, CAFA, or any case that Class Counsel or Defendant appear to be aware of. Although *Lackawanna Chiropractic P.C. v. Tivity Health Support, LLC*, 18-CV-00649, 2019 U.S. Dist. LEXIS 148756 (W.D.N.Y. Aug. 29, 2019) is out-of-circuit, neither set of counsel has attempted to challenge its reasoning on this point nor found any case which does.

Class Counsel make an even briefer argument in support of the disclosure requirements, merely calling them "typical and regularly ordered." (Dkt. 184-1 at Page ID 4811.) They cite two federal cases from California (one from this district) for this proposition. It's true that both of these cases, *Plaintiffs v. Hyundai Motor Co. Defendants*, (C.D. Cal., 8:20-cv-01584) and *Fernandez v. Corelogic Credco, LLC.*, (S.D. Cal., 3:20-cv-01262), involved class action settlements where additional disclosure requirements (similar to the ones imposed in this case) were demanded of objectors. However, none of the objectors in either of those cases, nor any of the parties, complained about those requirements and neither judge addressed the topic *sua sponte*. Judicial acquiescence on an issue which nobody in the case has brought to the court's attention is a threadbare basis for asserting that these disclosure requirements are lawful.

This issue is important because silence from class members is being portrayed as if the class affirmatively *approves* of the settlement outcome. *See*, Dkt. 185 at Page ID 4856 ("THE REACTION OF THE CLASS TO THE PROPOSED SETTLEMENT IS OVERWHELMINGLY FAVORABLE") *and* Dkt. 184-1 at Page ID 4809-10 ("99.99961% did not file objections, providing evidence that the Settlement has been well-received"). That portrayal is suspect on its face—it treats indifference and ignorance the same as approval—but it is *more* problematic when viewed against the backdrop of Class Counsel deliberately erecting new barriers to objecting.

There is a very good chance that more class members disagree with the settlement, and would have been willing to say so, but were unable or unwilling to jump through the additional hoops Class Counsel put in their way. Or were concerned that objecting in this case would limit their right to object in future cases. Class Counsel cannot claim a benefit from the class's silence after manufacturing that very silence.

<u>Class Counsel further chilled objections by directing objectors to violate this court's rules</u>

Class Counsel offered no explanation or excuse for why they directed objectors to violate this court's Local Rule 83-2.5, other than that such violations are part of a "typical and regularly ordered" process. (Dkt. 184-1 at Page ID 4811.) Defendant also did not give an explanation but

*did* suggest that any error was harmless because all of the objections "have been docketed and are addressed by the Parties." (Dkt. 185 at Page ID 4860.)

The objections were addressed by the Parties, true, but any docketing is, as of this writing, provisional. The clerk's admonishment that "the Court may … order the document stricken" still hangs over each of the "deficient" objections (*e.g.*, Dkt. 159) without being approved or disapproved by a judicial officer. Even if eventually allowed, the notices of deficiencies have already added to the chilling of objections. The first notice (*Id.*) was docketed on December 9, 2025, more than one month before the deadline for submitting objections. A would-be objector who saw that notice on the public docket—in response to an objection that appears to meet all of the requirements demanded of objectors (Dkt. 158)—would reasonably think twice about filing one of their own.

Asking objectors who are often untrained the law to violate a court rule is not something that should be typical, especially since the notices also warn that the filer might be subject to "other action as the Court deems appropriate," which could include sanctions (*e.g.*, Dkt 159). The fact that some objections were not deterred by this barrier does not mean that none were. Class Counsel set up a deficient process for handling objections and thereby harmed the class.

Class Counsel and the Representative Plaintiffs have treated the class unfairly by permitting only themselves to participate without disclosing personal information on the public docket

In their briefs supporting final approval, neither Class Counsel nor Defendant discussed the unfairness of the Representative Plaintiffs requesting service awards for, in part, "the reputational risks of being named in public litigation" (Dkt. 162-1 at Page ID 3804, *and* Dkt. 170-1 at Page ID 4338) while demanding that objectors disclose far more personal information—and on the public docket—just to be heard. (*See*, Rexroad Objection, Dkt. 176 at Page ID 4714, fn. 3.) The Plaintiffs' chosen settlement administrator even recognized this as an issue; he redacted excessive personal information in his own report of the received objections (Dkt. 182-1, Attachment 1), albeit too late since Class Counsel already forced them to be publicly docketed without redactions.

It would be unfair to compensate named plaintiffs for the "reputational risk" of having just their names and states of residence disclosed while objectors are given no compensation for

having to give up far more privacy just to assert our rights under Rule 23.[3] Class Counsel and the Representative Plaintiffs treat the class unfairly by requesting these service awards.

<u>Class Counsel and the Representative Plaintiffs did not meaningfully benefit the class</u>

In response to my Objection, Class Counsel claim "it was only through this Settlement that such notice of the Echo Issue was provided to Class Members." (Dkt. 184-1 at Page ID 4811.) That is false. *Plaintiffs' own Complaint* showed that Toyota provided notice of the Echo Issue and the volume adjustment fix to Class Members in multiple formats going back to 2007. (See Rexroad Objection, Dkt. 176 at Page ID 4716 fn. 5.) If Class Counsel and the Representative Plaintiffs provided any benefit here, it was in getting Toyota to publicize the existing notices *better* in order to reach the marginal group of Class Members who (1) experienced the Echo Issue at all; (2) didn't already learn of the fix in the meantime through Toyota's official channels, word of mouth, or their own troubleshooting; (3) still own a Class Vehicle, and (4) received and understood the Settlement Notice.

Class Counsel value this benefit at $22,500,000, which is absurd. (Dkt. 184-1 at Page ID 4795.) To arrive at that figure, the Plaintiffs' CPA, Christian Tregillis, started with the number of Class Vehicles which were manufactured (about 1.8 million), subtracted half of them (assumed to be no longer in service), and then multiplied the remaining half by $25 each. (Dkt. 170-8 at Page ID 4662-63.) That $25 per vehicle figure came from the estimated cost of an aftermarket transmitter that would presumably resolve the Echo Issue ($32.91) multiplied by 76% (which is nearly the proportion of respondents to a survey who said "talking on a handheld mobile device [while driving is] very or extremely dangerous"). (*Id.* at Page ID 4661.)

Even assuming that the estimate of Class Vehicles still on the road and the survey data are correct, this methodology lacks credibility. The aftermarket part that Tregillis cites as a comparator is not at all meaningful here because (1) Toyota isn't offering this item (or any other goods or services) to the Class as part of this settlement and (2) as the parties have well-explained, the Echo Issue can be suitably resolved at no cost through the simple volume adjustment process. Thus, the part is unnecessary and no rational Class Member would buy one to fix the Echo Issue. (There are lots of items that Class Members *could* theoretically purchase in order to resolve the Echo Issue, including entirely new vehicles, but we wouldn't say that Toyota is giving the value of a new car to each Class Member when the Issue can instead be resolved

---

[3] To be clear. I am not requesting compensation. I am merely noting that giving service awards for comparatively minor losses of privacy would be inappropriate.

without spending any money.) The cost of an unnecessary transmitter is irrelevant to calculating the value of this settlement to Class Members and it should be a multiplier of $0.

Applying the survey data to the transmitter's cost is just as unfounded. The general public's *perception* of a danger is not proof of actual danger—the true risk could be much higher or much lower. For example, "more than 25 million adults in the U.S." are afraid of flying to a diagnosable degree (*Aerophobia (Fear of Flying)*, Cleveland Clinic, accessed Feb 23, 2026, https://my.clevelandclinic.org/health/diseases/22431-aerophobia-fear-of-flying.); this is not proof that airline travel is unsafe.

There is also nothing in Tregillis' declaration that links the 76% figure to the Echo Issue. He offers no data showing how many Class Vehicles experienced the Issue, how many of those Vehicles' owners were unable to resolve the Issue prior to this litigation, how many of *them* (rather than all U.S. adults) consider talking on a handheld phone while driving to be dangerous, nor (most importantly) how many drivers actually refrained from handheld calling as a result.

If this were an adversarial case, Class Counsel would not be able to present the purported $22.5 million settlement valuation with a straight face. Since the methodology is nonsensical, the claimed number could be nearly anything… zero… billions… the only limit is Class Counsel's imagination. But since Defendant, Class Counsel, and the Representative Plaintiffs are aligned in seeking settlement approval, it falls to this court to protect the interests of the class, as Rule 23 demands, by ensuring that no sums are paid unless they are grounded in reason and appropriate.

Conclusion

Class Counsel and the Representative Plaintiffs have attempted to thwart participation by the unnamed class members, treated the unnamed members unfairly, and sought to enrich themselves based on a wildly inflated and bizarre valuation of the benefit they negotiated on behalf of the class. The requested attorney's fees, costs, and service awards should be denied in full. Alternatively, this court should reduce the requested amounts in light of Class Counsel's inappropriate conduct in representing the class and to deter similar actions in future cases.

26 Feb 2026

*Mailed simultaneously via first class U.S. mail to the Clerk of the Court, Class Counsel, and Toyota's counsel.*

Page 6 of 6

Rexroad
1041 Redway Ave
Cincinnati OH 45229

*SUB*

Objector's Reply Brief
*Kesselman v. Toyota Motor Sales*, No. 2:21-cv-06010-TJH-AYPx

CINCINNATI OH 452

28 FEB 2026    PM 4    L

THIS NATURALIZED
U.S. CITIZEN HOSTED
THE QUIZ SHOW
"JEOPARDY!"
FOR 37 SEASONS

*Who is Alex Trebek? · Forever · USA*

RECEIVED
CLERK, U.S. DISTRICT COURT

MAR – 3 2026

CENTRAL DISTRICT OF CALIFORNIA

**Clerk of Court**
United States District, Court Central District of California
First Street Courthouse
350 W. 1st Street, Courtroom #9C, 9th Floor
Los Angeles, California 90012

90012-35655